UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ARDARIES HARRIS

No. 24 CR 236-1

Judge Andrea R. Wood

**GOVERNMENT'S RESPONSE TO
DEFENDANT ARDARIES HARRIS'S MOTION TO SUPPRESS**

## I. INTRODUCTION

In May 2024, law enforcement was investigating a series of armed robberies that were being committed by defendant Ardaries Harris and others. In connection with that investigation, on May 11, 2024, law enforcement executed a search warrant at Harris's residence, located in a multi-unit apartment building at 6608 South Maryland Avenue in Chicago, pursuant to a search warrant that was signed by Magistrate Judge Maria Valdez.



*Apartment building located at 6608 South Maryland Avenue*

While executing the search warrant, law enforcement observed that a stolen gray Nissan Maxima, which had been used by the robbers, was in the parking area located behind the apartment building. After obtaining consent from the owner of the

1

Nissan Maxima, law enforcement searched the car. During the search, law enforcement recovered clothing and DNA swabs.



*Screenshot from video surveillance footage depicting*
*Nissan Maxima on morning of the search*

Harris has moved to suppress evidence recovered from the Nissan Maxima. Harris does not contend that he had a reasonable expectation of privacy in the stolen Nissan Maxima or that law enforcement lacked probable cause to search the car— nor could he. The car did not belong to Harris; it was stolen, and the owner provided law enforcement with consent to search it. Moreover, law enforcement had probable cause to search the car under the automobile exception to the Fourth Amendment's warrant requirement.

Given that Harris cannot credibly argue that he had a reasonable expectation of privacy in the stolen Nissan Maxima or that law enforcement lacked probable cause to search the car, Harris instead claims that law enforcement needed to obtain a warrant on the grounds that the parking area used by the building tenants constituted curtilage of his apartment unit. Harris's argument lacks merit. Common areas used by multiple tenants are not part of an apartment unit's curtilage. Harris's motion should be denied.

## II.     BACKGROUND

Between August 2023 and May 2024, Harris and his co-defendants conspired to rob multiple Chicago-area stores and pubs, during which they used the stolen Nissan Maxima.

On May 3, 2024, at approximately 10:24 p.m., three armed men (Harris, Jordan Fox, and Roosevelt Veal) in ski masks attempted to rob Humboldt Haus Liquor, located at 2958 West North Avenue in Chicago. When the men entered the store, they got into a shootout with the manager. About a minute before they entered the store, video surveillance footage from a nearby residence captured the three robbers getting out of the stolen Nissan Maxima in the alley located near the store. About two minutes later, the three men ran back to the car, got in, and drove away from the alley. The video recording is attached as Exhibit A (screenshots below).

  

*10:23 p.m.*                                          *10:26 p.m.*

On May 9, 2024, at approximately 10:25 p.m., armed masked men (Harris, Fox, and an unknown third individual) attempted to rob Basil Food and Liquor, located at 7446 North Western Avenue in Chicago. When two of the robbers entered the store,

3

a shootout between the robbers and the cashier ensued. The store's video surveillance recording is attached as Exhibit B (screenshot below).



By that time, law enforcement had installed a pole camera behind Harris's apartment. Approximately twenty-seven minutes after the attempted robbery of Basil Food and Liquor, a Nissan Maxima drove through the alley and backed into the common parking area located behind the apartment building. Two individuals got out of the car—one from the driver's seat and the other from the front passenger-seat. The pole camera footage is attached as Exhibit C (screenshot below).



About twelve minutes later, a black Chevrolet Suburban SUV registered to Fox arrived in the alley behind Harris's residence. Fox walked over from the apartment

4

building to the SUV and spoke with the driver. Fox was wearing a white t-shirt that had a blood stain on the right shoulder area. The pole camera footage is attached as Exhibit D (screenshot below).



On May 10, 2024, law enforcement obtained a warrant to search Harris's apartment. The search warrant and search application are attached, respectively, as Exhibit E and Exhibit F. The next morning, beginning at around 6:07 a.m., law enforcement executed the search warrant at Harris's apartment. Law enforcement drove through the alley located behind the apartment building to secure the back of the building. In his motion, Harris asserts that "[t]wo garage doors block access to and observation of the parking area of the building…" Motion, p. 5. However, as captured on video surveillance footage from the apartment building, when law enforcement arrived in the back alley, no doors were present blocking access to or observation of the parking area, providing a clear view of the cars in the lot, including the Nissan Maxima. The residential video surveillance footage is attached as Exhibit G (screenshot below).[1]

---

[1] The time stamp on the residential surveillance video recording is one-hour behind real time.



Law enforcement examined the exterior of the Nissan Maxima and identified the car's Vehicle Identification Number, which was visible from outside of the car. When the VIN was run through a law enforcement database, law enforcement learned that the Nissan Maxima had been reported stolen on or about April 26, 2024. Law enforcement contacted the owner of the Nissan Maxima and obtained oral consent to search the car. After obtaining the owner's consent, at approximately 9:39 a.m., law enforcement began searching the car. During the search, law enforcement recovered clothing and multiple DNA swabs.

## III. ARGUMENT

Harris contends that evidence recovered from the stolen Nissan Maxima should be suppressed because law enforcement did not obtain a warrant to search the car. The Court should deny Harris's motion. Harris lacks standing to challenge the search of the stolen Nissan Maxima. Law enforcement obtained consent from the owner to search the car. Moreover, law enforcement had probable cause to search the car under the automobile exception to the Fourth Amendment's warrant requirement. Finally, the Nissan Maxima was not, as Harris claims, within the

curtilage of his apartment unit; instead, the car was in a shared and common parking area of a multiple-dwelling residential apartment building.

### A. Harris Lacks Standing to Challenge the Search of the Stolen Nissan Maxima

Harris argues that the search of the Nissan Maxima was unlawful because no warrant was obtained prior to the search. However, Harris does not have Fourth Amendment standing to challenge the search. "Fourth Amendment rights are personal rights which, like some constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978); *see also United States v. Swift*, 220 F.3d 502, 510 (7th Cir. 2000) ("A defendant must show a violation of his (and not someone else's) rights.") (internal quotations omitted). Stemming from that principle, Fourth Amendment standing is "useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Terrence Byrd v. United States*, 584 U.S. 395, 410 (2018).

Harris bears the burden of establishing that he had a legitimate expectation of privacy in the Nissan Maxima. *See United States v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994). In his motion, Harris does not even claim to have had a legitimate expectation of privacy in the car. Nor could he credibly do so, as the car was stolen, and the owner provided law enforcement with consent to search it. *See Byrd*, 584 U.S. at 409 (holding that "a person present in a stolen automobile at the time of the search may [not] object to the lawfulness of the search of the automobile") (alteration in original) (quoting *Rakas v. Illinois*, 439 U.S. 128, 141 n.9 (1978)); *United States v. Walton*, 763 F.3d 655,

7

665 (7th Cir. 2014) ("A driver of a stolen car does not have standing to challenge a car search."); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) ("[A] search authorized by consent is wholly valid."); *United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009) ("Because a person may voluntarily waive his Fourth Amendment rights, no warrant is required where the [individual] consents to a search."); *United States v. Dean*, 550 F.3d 626, 630 (7th Cir. 2008) (law enforcement may "conduct a warrantless search if verbal consent is given.").

**B.** **Law Enforcement Had Probable Cause to Search the Nissan Maxima**

In addition to having obtained consent from the owner, law enforcement had probable cause to search the stolen Nissan Maxima under the automobile exception to the Fourth Amendment's warrant requirement. Under the automobile exception, law enforcement does "not need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity." *United States v. Reaves*, 796 F.3d 738 (7th Cir. 2015) (quoting *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014)); *see also United States v. Seymour*, 519 F.3d 700, 713 (7th Cir. 2008) ("[A] vehicle may be stopped and searched without a warrant if there is probable cause to believe the vehicle contains contraband or other evidence of illegal activity.") (quoting *United States v. Navarro*, 90 F.3d 1245, 1252 (7th Cir. 1996)). The question is whether there was "a fair probability" that contraband or evidence of a crime would be found in the car; "absolute certainty of such a discovery is not required." *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010). Here, law enforcement had probable cause to search the Nissan Maxima for evidence of

8

ownership because it had been reported stolen. *See Edwards*, 769 F.3d at 516 ("When a car is reported stolen and is recovered, the police have probable cause to look in the car for some evidence of ownership …"). In addition, law enforcement had probable cause to search the Nissan Maxima for evidence of the robberies, given that, as discussed above, the car had been captured on video surveillance footage being used by the robbers.

## C. The Rear Parking Area Did Not Constitute Curtilage of Harris's Apartment Unit

Harris has failed to carry his burden of establishing that law enforcement invaded the curtilage of his apartment unit when they searched the stolen Nissan Maxima. *See Harney v. City of Chicago*, 702 F.3d 916, 925 (7th Cir. 2012) ("the burden of establishing a claimed violation of the curtilage is on the party asserting the Fourth Amendment violation") (internal citation omitted). Curtilage is the "area outside of the home itself but so close to and intimately connected to the home that the activities that normally go there can be reasonably considered to be part of the home." *United States v. Sweeney*, 821 F.3d 893, 901 (7th Cir. 2016) (internal citation omitted); *see also United States v. House*, 120 F.4th 1313, 1322 (7th Cir. 2024) ("[C]urtilage is intimately linked to the home, both physically and psychologically, which matters precisely because the home is where privacy expectations are most heightened.") (internal quotation omitted). In evaluating curtilage in the context of multi-unit apartment buildings, the Seventh Circuit and other appellate courts have repeatedly held that common areas used by multiple tenants are not part of an apartment unit's curtilage. *Sweeney*, 821 F.3d at 901 (apartment building's common basement space is

not curtilage of defendant's apartment); *United States v. Correa*, 908 F.3d 208, 225 (7th Cir. 2018) (condominium building's garage and lobby were not curtilage of specific condominium unit); *United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991) ("We think the district court on solid ground in holding that a tenant has no reasonable expectation of privacy in the common areas of an apartment building."); *see also United States v. May-Shaw*, 955 F.3d 563, 571 (6th Cir. 2020) (carport in apartment building's parking lot was not curtilage of defendant's apartment); *United States v. Jones*, 893 F.3d 66, 72 (2d Cir. 2018) (shared driveway of two multi-family buildings was not within the curtilage of defendant's private home).

When evaluating the scope of curtilage, the Court should consider "(1) the proximity of the area in question to the home; (2) whether the area is included in an enclosure surrounding the home; (3) how the owner uses the area; and (4) the measures taken to protect the area from observation." *Sweeney*, 821 F.3d at 901 (citing *United States v. Dunn*, 480 U.S. 294, 301 (1987)). Considering these factors, the parking area behind the apartment building did not constitute curtilage of Harris's apartment unit. The parking area is separated from Harris's apartment unit by a set of stairs accessible to the residents of, and visitors to, the various apartment units in the building (depicted below); it was not "enclosed and intimate to [defendant's] apartment itself." *Sweeney*, 821 F.3d at 902.

10



Harris did not have exclusive use of the parking area or use the space for activities "intimately linked" to his own apartment unit. *Id*. Critically, Harris did not have a right to exclude others from the building's parking area. *Id*. at 900 (defendant had no "exclusive property interest in any part" of shared apartment area and no legal right to exclude technical trespassers from the shared area); *see also Correa*, 908 F.3d at 217 (agents did not trespass against defendant's property interests in accessing common garage or lobby of multiunit building). Finally, the parking area was not shielded from the public's view, and Harris did not himself take any steps to shield the area from view of any passersby. *Sweeney*, 821 F.3d at 902. As the video surveillance footage clearly shows, when law enforcement arrived to execute the residential search warrant that morning, the carport doors were open, and the parking area was easily accessible to the public.



Under these circumstances, the parking area was not curtilage subject to Fourth Amendment protections. *See, e.g., United States v. Pyne,* 175 F. App'x 639, 640 (4th Cir. 2006) (affirming district court's "determination that the parking garage was not curtilage subject to Fourth Amendment protections" where "[t]he parking garage at issue was used by other tenants, contained multiple parking spaces, and was located at the bottom level of a multi-level apartment complex" and "the security gate . . . was, at best, unreliable").

### D.    Harris Has Not Identified a Disputed Material Fact Warranting an Evidentiary Hearing

Harris has requested that the Court hold an evidentiary hearing to resolve his suppression motion. "Evidentiary hearings on motions to suppress are not granted as a matter of course." *United States v. Coleman,* 149 F.3d 674, 677 (7th Cir. 1998). "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin,* 638 F.3d 562, 564 (7th Cir. 2011). "To obtain an evidentiary hearing relating to suppression of evidence, the defendant 'bears the burden of making a prima facie showing of illegality.'" *United States v.*

*Edgeworth*, 889 F.3d 350, 353-54 (7th Cir. 2018) (quoting *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992)). A defendant's "allegations and moving papers" must be "sufficiently definite, specific, non-conjectural and detailed . . . to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. McGaughy,* 485 F.3d 965, 969 (7th Cir. 2007) (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)). In other words, the "onus" falls on a defendant to "'specifically . . . allege[] a *definite disputed factual issue*,' and to demonstrate its materiality." *Id.* (quoting *United States v. Martin*, 422 F.3d 597, 603 (7th Cir. 2007)) (internal citation omitted) (alterations and emphasis in original); *see also Curlin*, 638 F.3d at 564.

Harris has not identified a factual dispute that would materially alter the outcome of his suppression motion. The location of the Nissan Maxima and the surrounding area (including the open carport doors) when it was searched was captured on video surveillance recordings, excerpts of which are being provided to the Court in connection with the government's response brief.

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court

deny Harris's motion to suppress.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:    */s/ Stephanie Stern*
EMILY C.R. VERMYLEN
STEPHANIE STERN
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
312-353-5300