UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 24 CR 236 |
| v. | |
| JORDAN FOX | Judge Andrea R. Wood |

**GOVERNMENT'S RESPONSE TO
DEFENDANT JORDAN FOX'S MOTION TO SUPPRESS**

## I.  INTRODUCTION

Between August 2023 and May 2024, defendant Jordan Fox and his co-defendants conspired to commit a series of violent armed robberies in Chicago. As part of its investigation into the robberies, on April 2, 2024, law enforcement obtained search warrants for, among other things, historical cell site records for phones used by the offenders, including Fox. The cell site location records showed that the cell phones used by Fox—associated with phone numbers 773-853-3428 and 312-735-0397—were located in the vicinity of multiple armed robberies, including three armed robberies that occurred on January 15, 2024. On May 10, 2024, Fox was charged by complaint with committing the January 15, 2024 armed robberies, in violation of 18 U.S.C. §§ 1951(a) and 924(c). Dkt. 1. When law enforcement went to arrest Fox in a car the following day, he got out of the car and fled on foot; Fox was eventually apprehended. As he got out of the car to flee, Fox dropped a Glock pistol on the ground, which was recovered by law enforcement.

On May 20, 2024, Fox was charged by indictment with one count of conspiracy to commit robbery, three substantive robbery counts, and three counts of brandishing

1

a firearm during and in relation to the robberies. Dkt. 24. On March 24, 2025, Fox and his co-defendants were charged by superseding indictment with conspiracy to commit robbery, multiple substantive robbery counts, and multiple counts of brandishing a firearm during and in relation to the robberies. Dkt. 88. The case is set to proceed to trial in June 2026.

After charges were brought, law enforcement continued its investigation into the armed robberies. On April 8, 2025, law enforcement obtained search warrants for social media accounts used by the offenders, including accounts used by Fox. *See* Dkts. 103, 105, 106, 108. The social media account warrants yielded additional evidence of Fox's involvement in the offenses, including images of Fox and other members of the robbery crew with firearms and large amounts of cash, posted near the time of the robberies.

Fox has moved to suppress "all cell site information obtained pursuant to the warrants issued in this case," "all social media and digital content, including but not limited to YouTube and other online social media materials, obtained because of the warrant," and "the firearm recovered at the time of [Fox's] arrest." Dkt. 222 at 11. It is not entirely clear what specific cell site and social media warrants Fox is seeking to suppress, and there were no YouTube search warrants issued in this case. Given that Fox lacks standing to challenge warrants concerning phones and social media accounts belonging to his co-defendants, the government presumes for the purposes of its response that Fox's motion concerns the warrants pertaining to his cell phones and social media accounts, copies of which are attached as Exhibit A (773-853-3428),

2

Exhibit B (312-735-0397), Exhibit C (Fox's Facebook account), and Exhibit D (Fox's Instagram account).[1]

Fox's motion to suppress those warrants lacks merit and should be dismissed. As Magistrate Judge Jeffrey Cole and M. David Weisman found when they authorized the search warrants, the search warrant affidavits provided probable cause to believe that the phone location records and social media account records would uncover evidence of the offenses. Moreover, this Court need not even reach the question of probable cause because the law enforcement agents executing those searches undeniably acted in good faith when they relied on the judicially authorized warrants. *See United States v. Leon*, 468 U.S. 897, 905, 914 (1984) ("When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time.").

## II. ARGUMENT

### A. Magistrate Judges Properly Found There Was Probable Cause to Support the Issuance of the Search Warrants.

Magistrate Judges Cole and Weisman each found that there was probable cause to support the issuance of the historical cell site and social media search warrants. Their probable cause findings are accorded "great deference." *United States v. Leon*, 468 U.S. 897, 914 (1984). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014); *see also United States v. Seiver*, 692 F.3d 774, 777

---

[1] Fourth Amendment rights are personal and may not be asserted vicariously on behalf of others. *United States v. Dixon*, 137 F.4th 592, 601 (7th Cir. 2025). A defendant seeking to suppress evidence "bears the burden of establishing that the search violated *his own* Fourth Amendment rights." *Id.* (emphasis added).

(7th Cir. 2012) ("[P]robable cause is far short of certainty . . . and not a probability that exceeds 50 percent ('more likely than not'), either."). "Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) ("As the Court frequently has remarked, probable cause is a flexible, common-sense standard."). "[A]ll that is required for a lawful search is *probable* cause to believe that the search will turn up evidence or fruits of crime, not certainty that it will." *United States v. Ramirez*, 112 F.3d 849, 851–52 (7th Cir. 1997) (emphasis in original).

A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *Gates*, 462 U.S. at 238; *see also United States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013). "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (citing *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008)). Here, the evidence set forth in the ATF Special Agent Adam Fitzgerald's search warrant affidavits established probable cause to believe that Fox was involved in the robberies and that information concerning the location of his cell phones and content of his social media accounts would yield evidence pertaining to the robberies.

4

In his affidavit in support of the cell site warrants, Special Agent Fitzgerald explained how all of the robberies had a similar *modus operandi*—in that liquor or convenience stores in the northwest side of Chicago were targeted at night by these robbers—and detailed how ATF identified individuals, including Fox, believed to have been involved in the robberies. For example, during November 2023 robbery of California Food & Liquors, the two robbers got into a shootout with the store employee, causing them to flee the store. The robbers left behind a black backpack, on which law enforcement identified the presence of Fox's DNA. *See* Exhibits A and B, ¶¶ 27, 44-45, 78-81.

 

*Photographs of the California Food & Liquors robbery
set forth in Special Agent Fitzgerald's Affidavit*

Special Agent Fitzgerald's affidavit also explained that Fox was identified as a participant in a music video titled "Big top ft Thflillaw 100 rounds shot by DigitalReel," along with other suspected members of the robbery crew, that had been uploaded to YouTube by a rapper identified as "BigTop BigOpp." *See* Exhibits A and B, ¶¶ 43, 68–73. Special Agent Fitzgerald made this identification, in part, based on the fact that the username for Fox's publicly available Instagram account was "bigtop_bigopp" (i.e., the same name of the rapper who posted the music video). *Id.*,

¶ 74. Additionally, Special Agent Fitzgerald compared one of the individuals rapping in the music video to a booking photograph of Fox, and identified that both had the same tattoo of a black bat on their left temples. *Id.*, ¶¶ 74–76.



*Screenshot from music video and Fox's December 2023 booking photograph*
*set forth Special Agent Fitzgerald's Affidavit*

In the music video, another suspected member of the robbery crew held a firearm that had a red and white "supreme" sticker on it wrapped around an extended magazine. *Id.*, ¶¶ 68–73.



*Screenshot from music video*
*set forth Special Agent Fitzgerald's Affidavit*

A firearm that had a red and white "supreme" sticker on it wrapped around an extended magazine was used during the October 2023 R&J Food and Liquor, the October 2023 Liquor Max robbery, and the November 2023 Gold Star Liquor robbery;

moreover, during the latter robbery, the firearm was used by an individual who resembled Fox and who was wearing a specific brand of underwear that Fox was observed wearing in a publicly available video from his Instagram account. *Id.*, ¶¶ 68–75.

  

*Screenshots from the robberies*
*set forth Special Agent Fitzgerald's Affidavit*

Special Agent Fitzgerald's affidavit also detailed how ATF located the publicly available Instagram account for one of Fox's co-defendants, Roosevelt Veal, which featured photographs of Fox, Veal, and others holding guns and large amounts of cash. *See* Exhibits A and B, ¶¶ 109–112. The photographs were posted on or about January 16, 2024—one day after Mr. P Beverage Depot, Before You Go Liquor, and Clybourn Market were robbed. *Id.*

 

*Social media photographs*
*set forth Special Agent Fitzgerald's Affidavit*

7

In addition to providing probable cause to believe that Fox was involved in the robbery offenses, Special Agent Fitzgerald's affidavit also identified the reasons for believing that cell phones associated with phone numbers 773-853-3428 and 312-735-0397 were used by Fox. *See* Exhibits A and B, ¶¶ 82–86. Further, Special Agent Fitzgerald explained that, based on his training and experience, historical cell site information would provide evidence pertaining to the armed robberies, including evidence concerning Fox's location around the time that the robberies took place. *Id.*, ¶¶ 127–136.

Likewise, Special Agent Fitzgerald's affidavit in support of the social media account search warrants established probable cause for believing that Fox was involved in the robbery offense, was the user of the subject accounts, and that those accounts would contain evidence relating to the robbery offenses. *See* Exhibits C and D. In addition to the information previously set forth in the cell site warrant applications, Special Agent Fitzgerald's affidavit explained that the resulting cell site records implicated Fox in the robberies that occurred on January 15, 2024. *Id.*, ¶¶ 62–68. In addition, the affidavit detailed how, following a shootout that occurred during the May 9, 2024 attempted robbery of Basil Food and Liquor, an individual closely resembling Fox was observed on pole camera video surveillance footage outside the residence of one of his co-defendants wearing a white t-shirt with an apparent blood stain on the right shoulder area; later that night, Fox received emergency room treatment at a nearby hospital. *Id.*, ¶¶ 58–61. Importantly, at the time that the social media account search warrants were signed, Fox had already been charged by

indictment with committing the armed robberies, meaning that a grand jury had already found there was probable cause to believe Fox was involved in the offenses.



*Screenshot from pole camera footage*
*set forth in Special Agent Fitzgerald's Affidavit*

In his affidavit, Special Agent Fitzgerald further explained that, based on his training and experience, there was probable cause to believe that the content of Fox's social media accounts would provide evidence pertaining to the armed robberies. *Id.*, ¶¶ 5–7, 11–12.

Fox's arguments fail to undermine the validity of the search warrants and, at times, appear to misunderstand the nature of the probable cause inquiry. For example, Fox argues that the "Fourth Amendment requires more than mere association; it requires particularized evidence tying the individual *to the charged offense.*" Motion, ¶ 5 (emphasis added). Fox is mistaken. As discussed above, probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime. *Gates*, 462 U.S. at 238. Here, the search warrant applications did just that and, thereby, established probable cause to believe that

Fox's historical cell site and social media accounts records would uncover evidence concerning the robbery offenses.

### B. The "Good Faith" Exception to the Exclusionary Rule Precludes Suppression.

Exclusion of relevant evidence is an extreme sanction and should be ordered "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. That "judicially created remedy" is designed as a deterrent against police misconduct and does not confer "a personal constitutional right of the party aggrieved.'" *Id. at* 905. "As with any remedial device, application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced." *Illinois v. Krull*, 480 U.S. 340, 349 (1987). In *Leon*, the Supreme Court held that the exclusionary rule should not be applied to evidence obtained by a law enforcement officer whose reliance on a search warrant issued by a magistrate was objectively reasonable, regardless of any claimed defect in the warrant. 468 U.S. at 920 ("In most such cases, there is no police illegality and thus nothing to deter.").

Therefore, even if this Court were to find that the search warrant applications did not establish probable cause, Fox's motion to suppress should still be denied because the law enforcement agents executing the searches relied on the warrants in good faith. *See United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir. 1992) ("Evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant will not be suppressed unless 'a reasonably well trained officer would

have known that the search was illegal despite the magistrate's authorization.'")

(quoting *Leon*, 468 U.S. at 922 n.23). As the Seventh Circuit explained:

> Overcoming the presumption of good faith is no small feat, as an officer cannot ordinarily be expected to question a judge's probable cause determination. Reflecting this high standard, we have found that Leon's protection did not apply only on rare occasions—indeed, on only one occasion in recent years.

*United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019) (citing *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004)).

An officer's "decision to obtain a warrant is *prima facie* evidence that he was acting in good faith." *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003). It is Fox's burden to rebut this presumption. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008). To do so, Fox "must show that the magistrate simply rubber-stamped the warrant application, the officers were dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause that no officer could have relied on it." *Peck*, 317 F.3d at 757; *see also Garcia*, 528 F.3d at 487 ("A defendant can rebut this presumption by showing that (1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable."). Fox has not satisfied his burden of rebutting this presumption.

With respect to the first two factors, Fox does not allege, and there is nothing to indicate, that either Magistrate Judge Cole or Magistrate Judge Weisman abandoned their detached and neutral roles, or that Special Agent Fitzgerald was

11

dishonest or reckless in preparing his affidavits. With respect to the third factor, as summarized above, the affidavits established probable cause, and law enforcement officers reasonably relied on the judicially-authorized warrants in conducting the searches. *See Krull*, 480 U.S. at 349 ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."). Their reliance was objectively reasonable given the evidence and investigation summarized in the affidavits supporting the warrants. Nothing about the warrants, the surrounding circumstances, or the law relating to the searches indicates that a reasonable law enforcement officer would not have relied on the warrants under these facts. Therefore, even were the warrants in this case were somehow invalid, the good-faith exception protects the evidence derived from the searches from suppression.

This exception encompasses the firearm that Fox dropped to the ground as he fled from law enforcement while trying to avoid apprehension and arrest on May 11, 2025, which Fox erroneously considers to be "derivative" evidence. There is no basis to suppress the firearm as "derivative" evidence or for any other reason, as it was lawfully obtained under the plain view doctrine. *See United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997). Specifically, the firearm was abandoned in a public area, by a fleeing suspect, whom law enforcement was attempting to arrest for participating in a series of armed robberies. Because the incriminating firearm was in plain view of law enforcement who were lawfully present at the scene, they had every right to seize it. *See id.* at 328-29.

12

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Fox's motion to suppress.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:    */s/ Stephanie Stern*
EMILY C.R. VERMYLEN
STEPHANIE STERN
JALAN JASKOT
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
312-353-5300

13