UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ROOSEVELT VEAL

No. 24 CR 236

Judge Andrea R. Wood

**GOVERNMENT'S RESPONSE TO
DEFENDANT ROOSEVELT VEAL'S MOTIONS TO SUPPRESS**

## I.     INTRODUCTION

Between August 2023 and May 2024, defendant Roosevelt Veal and his co-defendants conspired to commit a series of violent armed robberies in Chicago. As part of its investigation into the robberies, on April 2, 2024, law enforcement obtained search warrants for, among other things, historical cell site records for phones used by the offenders, including Veal. Exhibit A (312-818-9983 application and affidavit). The cell site location records showed that the cell phone used by Veal—associated with the number 312-818-9983—was located in the vicinity of multiple armed robberies, including the January 15, 2024 armed robbery of Before You Go Liquor Store. On May 10, 2024, Veal was charged by complaint with the January 15, 2024 armed robberies of three Chicago area liquor stores, in violation of Title 18, United States Code, Sections 1951(a) and 924(c). Dkt. 1.

On May 20, 2024, Veal was charged by indictment with one count of conspiracy to commit robbery, three substantive robbery counts, and three counts of brandishing a firearm during and in relation to the robberies. Dkt. 24. On March 24, 2025, Veal and his codefendants were charged by superseding indictment with conspiracy to

1

commit robbery, multiple substantive robbery counts, and multiple counts of brandishing a firearm during and in relation to the robberies. Dkt. 88. The case is set to proceed to trial in June 2026.

After initial charges were brought, law enforcement continued its investigation into the armed robberies. On November 14, 2024, law enforcement obtained a search warrant for historical cell site records for a second phone used by Veal. Exhibit B (773-993-7848 application and affidavit). The cell site location records showed that this cell phone that was used by Veal—associated with the number 773-993-7848— was in the vicinity of multiple armed robberies, including the May 3, 2024 robberies of Humboldt Haus Liquor and Gladstone Food Mart, and the May 4, 2024 robbery of the Irish Nobleman.

Additionally, on December 24, 2024, law enforcement obtained a warrant for a buccal swab from Veal. Exhibit C (Veal buccal swab application and affidavit). The buccal swab obtained pursuant to the warrant was utilized by DNA experts and the expert reports show that Veal's DNA was found on various items associated with the armed robberies, including a white glove worn by a robber during the Super Saving Food and Liquor robbery that was pulled off as the victim struggled with the robber and in a white Jeep Cherokee the robbers used to commit three robberies on January 15, 2024.

Veal has moved to suppress all evidence obtained from the cell site warrants related to his 773-993-7848 and 312-818-9983 phone accounts, as well as all evidence obtained pursuant to the buccal swab warrant. Dkts. 228 (motion to suppress buccal

2

swab search warrant), 229 (motion to suppress evidence obtained from 773-993-7848 cell site warrant), 230 (motion to suppress evidence obtained from 312-818-9983 cell site warrant). Veal's motions to suppress these warrants lack merit and should be dismissed. As Magistrate Judge Jeffrey Cole and Young B. Kim found when they authorized the search warrants, the search warrant affidavits provided probable cause to believe that the phone location records and buccal swab would uncover evidence of the offenses. Moreover, this Court need not even reach the question of probable cause because the law enforcement agents executing those searches undeniably acted in good faith when they relied on the judicially authorized warrants. *See United States v. Leon*, 468 U.S. 897, 905, 914 (1984) ("When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time.").

## II.    ARGUMENT

### A.    Magistrate Judges Properly Found There Was Probable Cause to Support the Issuance of the Search Warrants.

Magistrate Judges Cole and Kim each found that there was probable cause to support the issuance of the historical cell site and buccal swab search warrants. Their probable cause findings are accorded "great deference." *Leon*, 468 U.S. at 914. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014); *see also United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) ("[P]robable cause is far short of certainty . . . and not a probability that exceeds 50 percent ('more likely than not'), either."). "Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person

3

to believe that a search will uncover evidence of a crime." *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) ("As the Court frequently has remarked, probable cause is a flexible, common-sense standard."). "[A]ll that is required for a lawful search is *probable* cause to believe that the search will turn up evidence or fruits of crime, not certainty that it will." *United States v. Ramirez*, 112 F.3d 849, 851–52 (7th Cir. 1997) (emphasis in original). "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (citing *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008)). Here, the evidence set forth in ATF Special Agent Adam Fitzgerald's search warrant affidavits established probable cause to believe that Veal was involved in the robberies and that information concerning the location of his cell phones and DNA from his buccal swab would yield evidence pertaining to the robberies.

In his affidavit in support of the cell site warrants, Special Agent Fitzgerald explained how all of the robberies had a similar *modus operandi*—in that liquor or convenience stores in the northwest side of Chicago were targeted at night by these robbers—and detailed how ATF identified individuals, including Veal, believed to have been involved in the robberies. For example, video surveillance footage of the October 14, 2023 Jerusalem Liquors robbery shows a robber with a tattoo above his left eye. Special Agent Fitzgerald's affidavit explained that he identified Veal as one of the robbers in the Jerusalem Liquors robbery based, in part, on the fact that the

robber and Veal had the same tattoo above the left eye. *See* Exhibit A, ¶ 116; Exhibit B, ¶ 112.



*Veal's Illinois driver's license photograph and Jerusalem Liquors surveillance screenshot set forth in Special Agent Fitzgerald's Affidavit*

Additionally, one of the robbers in the Jerusalem Liquors robbery brandished a firearm with the same unique scratches on top of the barrel as a firearm Veal is seen holding in a picture posted to his Instagram account a few weeks after the robbery. Exhibit A, ¶¶ 113-115; Exhibit B, ¶¶ 109-111.

5



*Image of firearm with unique scratches used by a robber during the October 14, 2023 Jerusalem Liquors robbery and close up picture of firearm with unique scratches on Veal's Instagram account as set forth in Special Agent Adam Fitzgerald's Affidavit*

Special Agent Fitzgerald's affidavit also explained that Veal was identified as a participant in a music video titled "Big top ft Thflillaw 100 rounds shot by DigitalReel," along with other suspected members of the robbery crew, that had been uploaded to YouTube by a rapper identified as "BigTop BigOpp." *See* Exhibit A, ¶¶ 43, 68–73, 107; Exhibit B ¶¶ 39, 65-69, 103. In the music video, another suspected member of the robbery crew held a firearm that had a red and white "supreme" sticker on it wrapped around an extended magazine. Exhibit A, ¶ 70; Exhibit B, ¶ 66.

6



*Screenshot from music video*
*set forth Special Agent Fitzgerald's Affidavit*

A firearm that had a red and white "supreme" sticker on it wrapped around an extended magazine was used during the October 2023 R&J Food and Liquor, the October 2023 Liquor Max robbery, and the November 2023 Gold Star Liquor robbery. Exhibit A, ¶ 71; Exhibit B, ¶ 67. Meanwhile, on October 15, 2023, a member of the robbery crew posted a picture of Veal wearing black Nike Air Jordan retro low top sneakers that resemble sneakers that a robber wore during approximately eleven liquor store robberies between October 14, 2023 and October 25, 2023. Exhibit A, ¶ 118; Exhibit B, ¶ 114.

7



*Screenshot of Veal right wearing black Nike Air Jordan Retro low top sneakers and still image of Jerusalem Liquor robber wearing black Nike Air Jordan Retro low top sneakers set forth in Special Agent Fitzgerald's Affidavit*

Special Agent Fitzgerald's affidavit also detailed how ATF located Veal's publicly available Instagram account, which featured pictures of Veal, Fox, and others holding guns and large amounts of cash. *See* Exhibit A, ¶¶ 108-112; Exhibit B ¶¶ 104-108. The photographs were posted on or about January 16, 2024—one day after Mr. P Beverage Depot, Before You Go Liquor, and Clybourn Market were robbed. *Id.*

8

 

*Social media photographs*
*set forth Special Agent Fitzgerald's Affidavit*

In addition to providing probable cause to believe that Veal was involved in the robbery offenses, Special Agent Fitzgerald's affidavit also identified the reasons for believing that cell phones associated with the phone numbers 312-818-9983 and 773-993-7848 were used by Veal. *See, e.g.,* Exhibits A, ¶¶ 119-120; Exhibit B, ¶¶ 115-116. Further, Special Agent Fitzgerald explained that, based on his training and experience, historical cell site information would provide evidence pertaining to the armed robberies, including evidence concerning Veal's location around the time that the robberies took place. Exhibit A, ¶¶ 129-136; Exhibit B, ¶¶ 182-190.

Likewise, Special Agent Fitzgerald's affidavit in support of the buccal swab search warrant established probable cause for believing that Veal was involved in the robbery offenses and that his DNA would contain evidence relating to the robbery offenses. *See* Exhibit C. In addition to the information previously set forth in the cell site warrant applications, Special Agent Fitzgerald's affidavit explained that the grand jury returned an indictment against Veal and his codefendants, charging them with one count of conspiracy to commit robbery, three counts of robbery, and six counts of brandishing a firearm during and in relation to those robberies. Exhibit C,

9

¶ 5. This grand jury indictment conclusively demonstrated "the existence of probable cause to believe the defendant perpetrated the offense alleged." *Kaley*, 571 U.S. at 328 (internal citations and quotation marks omitted). Special Agent Fitzgerald also explained that, during the course of the investigation, law enforcement recovered a glove dropped by a robber in the Super Saving Food attempted robbery, Exhibit C, ¶ 39, gloves and phone charging cords from a Jeep used by the robbers, *id.* ¶ 51, and a backpack used by one of the robbers in the robbery of California Food & Liquors, *id.* ¶ 73. DNA was recovered from each of these items.

Veal's arguments fail to undermine the validity of the search warrants, and he appears to misunderstand what is required to demonstrate probable cause. For example, in the cell site warrants, Veal repeatedly argues that the application for a cell site warrant must specify probable cause to believe a crime occurred on each day that data is seized. *See, e.g.,* Dkt. 230 at 6 ("Here the affiant asks for the defendants Historical CSLI from August 17 2023-Feb 5, 2024, without demonstrating to the issuing Judge a basis of probable cause supported by facts that the defendant committed multiple specific crimes from August 2023-Feb 2024."); Dkt. 229 at 6 ("The affidavit is completely devoid of any nexus or probable cause for the defendants CSLI from May 1, 2024 – May 18, 2024."). Defendant is incorrect.

As discussed above, probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime. *Gates*, 462 U.S. at 238. Here, Special Agent Fitzgerald's affidavits associated established

10

probable cause to believe that Veal had committed armed robberies and was a member of a robbery crew targeting liquor stores. *See* Exhibit A, ¶¶ 33-35, 107-118; Exhibit B, ¶¶ 29-35, 103-114. The application for Veal's cellphone with the number 312-818-9983 identified that law enforcement was currently investigating 46 robberies believed to have been committed by Veal's robbery crew between September 7, 2023 and January 15, 2024. Exhibit A, ¶ 35. Special Agent Fitzgerald further established that the warrant sought "information both before and after the robberies to allow law enforcement to gain information regarding any advance preparation work for the robberies, and to gain information regarding efforts to conceal the robberies." *Id.* ¶ 136. The application for Veals' cellphone with the number 773-993-7848 similarly established probable cause for seizing cell site for the period of May 1, 2024 through May 18, 2024. *See, e.g.,* Exhibit B. ¶ 187 ("[T]he robberies under investigation [] began in or around September 7, 2023 and continued through May 9, 2024. . . . This affidavit seeks information pertaining to [phones associated with the robbers] from May 1, 2024 through May 18, 2024. This affidavit seeks information for a one-week period after the arrest of VEAL, FOX, and A.HARRIS, because X. HARRIS is not in custody and law enforcement seeks to ascertain any steps he may have taken to conceal the robberies or his participation in the robberies after the May 11, 2024 arrest of VEAL, FOX, and A. HARRIS.").

As to the buccal swab search warrant, Veal argues that the warrant is invalid because it fails to provide direct evidence that Veal was involved in the robberies from which the tested items were recovered. *See, e.g.,* Dkt. 228 at 7 ("Here the agent did

11

not set forth any facts or conditions that form a reasonable basis that Mr. Veal allegedly committed the [specific] crime that occurred Nov 24, 2023 which is where the white glove was recovered from, or any facts or conditions that connect the defendant to the white Jeep."). Notably, however, this warrant was obtained *after* a grand jury had found probable cause to indict defendant for participating in armed robberies. The grand jury's indictment alone would be enough to establish probable cause to swab Veal and his codefendants. *See Maryland v. King,* 133 S. Ct. 1958, 1978-80 (2013) (the Court weighted the "substantial government interest and the unique effectiveness of DNA identification" against the "minimal intrusion" engendered by a buccal swab, which "involves virtually no risk, trauma, or pain" and concluded that the use of buccal swabs to ascertain the "DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure"). Here, however, in addition to the probable cause from the grand jury, law enforcement also presented the magistrate judge with an affidavit independently detailing probable cause to believe Veal participated in the armed robberies and that Veal's buccal swab would uncover evidence of a crime.

Meanwhile, defendant's case citations are inapposite. For instance, defendant repeatedly cites to *United States v. Carpenter*, 585 U.S. 296 (2018) in support of his motion to suppress the cell site evidence. *See* Dkt. 229 at 3, 4, 9, 10; Dkt. 230 at 5, 12, 13. However, in *Carpenter* the officers obtained historical cell site based on an order under the Stored Communications Act. *Carpenter*, 585 U.S. at 301-302. The Supreme Court stated that obtaining cell site through the Stored Communications Act was

12

constitutionally insufficient, and held that the government "must generally obtain a warrant supported by probable cause before acquiring" historical cell site. *Id.* at 316. Here, law enforcement complied with *Carpenter* and obtained a search warrant for the seizure of defendant's cell site. Defendant also cites to *United States v. Hinton*, 219 F.2d 324 (1955) to support his argument that there is a lack of probable cause for the time period the cell site warrants sought to search. *See* Dkt. 129 at 4; Dkt. 230 at 5, 8, 9. In *Hinton*, the Seventh Circuit held that a search warrant was insufficient where it sought to search an entire apartment building without establishing probable cause for each individual apartment in the building. *Hinton*, 219 F.2d at 325. The facts in the present case are vastly different. Special Agent Fitzgerald's affidavits established probable cause to seize the cell site associated with each of defendant's cell phones for a limited, specified period of time. Unlike in *Hinton*, where the officer did not know where the illegal activity occurred but wanted to search the entire apartment to figure it out, here, Special Agent Fitzgerald established probable cause to identify exactly where he expected to find evidence of criminal activity and on what basis.

B. **The "Good Faith" Exception to the Exclusionary Rule Precludes Suppression.**

Exclusion of relevant evidence is an extreme sanction and should be ordered "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. That "judicially created remedy" is designed as a deterrent against police misconduct and does not confer "a personal constitutional right of the party aggrieved." *Id. at* 905. "As with any remedial device,

13

application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced." *Illinois v. Krull*, 480 U.S. 340, 349 (1987). In *Leon*, the Supreme Court held that the exclusionary rule should not be applied to evidence obtained by a law enforcement officer whose reliance on a search warrant issued by a magistrate was objectively reasonable, regardless of any claimed defect in the warrant. 468 U.S. at 920 ("In most such cases, there is no police illegality and thus nothing to deter.").

Therefore, even if this Court were to find that the search warrant applications did not establish probable cause, Veal's motions to suppress should still be denied because the law enforcement agents executing the searches relied on the warrants in good faith. *See United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir. 1992) ("Evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant will not be suppressed unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'") (quoting *Leon*, 468 U.S. at 922 n.23). As the Seventh Circuit explained:

> Overcoming the presumption of good faith is no small feat, as an officer cannot ordinarily be expected to question a judge's probable cause determination. Reflecting this high standard, we have found that Leon's protection did not apply only on rare occasions—indeed, on only one occasion in recent years.

*United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019) (citing *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004)).

An officer's "decision to obtain a warrant is *prima facie* evidence that he was acting in good faith." *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003). It is

14

Veal's burden to rebut this presumption. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008). To do so, Veal "must show that the magistrate simply rubber-stamped the warrant application, the officers were dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause that no officer could have relied on it." *Peck*, 317 F.3d at 757; *see also Garcia*, 528 F.3d at 487 ("A defendant can rebut this presumption by showing that (1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable."). Veal has not satisfied his burden of rebutting this presumption.

With respect to all of the search warrants, Veal claims that Special Agent Fitzgerald was dishonest or reckless in preparing the affidavits, and the warrants so lacked probable cause that the officer's belief in their existence was unreasonable. *See* Dkt. 228 at 6-7; Dkt. 229 at 11-2; Dkt. 230 at 16-17. Although Veal claims the agent acted recklessly, he does little more to support this argument than to restate his belief that the affidavit did not demonstrate probable cause. And, as summarized above, the affidavits established probable cause, and law enforcement officers reasonably relied on the judicially-authorized warrants in conducting the searches. *See Krull*, 480 U.S. at 349 ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."). In his motion to suppress evidence obtained from the cellphone related the number 312-818-9983,

15

defendant additionally asserts that Special Agent Fitzgerald "mislead[] and manipulat[ed]" the magistrate judge by "acting as if [the October 14 robberies] were the only robberies [for which he] sought historical" cell site. Dkt. 230 at 11. This argument is undermined by the search warrant itself, which plainly states, multiple times, that law enforcement is seeking to seize cell site data "for the time period from August 17, 2023 through February 5, 2024." Exhibit A at 78 and at Attachment A-5.

Law enforcement's reliance was objectively reasonable given the evidence and investigation summarized in the affidavits supporting the warrants. Nothing about the warrants, the surrounding circumstances, or the law relating to the searches indicates that a reasonable law enforcement officer would not have relied on the warrants under these facts. Therefore, even were the warrants in this case were somehow invalid, the good-faith exception protects the evidence derived from the searches from suppression.

### C. Defendant is Not Entitled to an Evidentiary Hearing or a *Franks* Hearing.

Defendant requests both an evidentiary hearing and a *Franks* hearing. *See* Dkt. 228 at 7; Dkt. 229 at 12; Dkt. 230 at 17. Neither is warranted. "Evidentiary hearings on motions to suppress are not granted as a matter of course." *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). "To obtain an evidentiary hearing relating to suppression of evidence, the defendant 'bears the burden of making a

16

prima facie showing of illegality.'" *United States v. Edgeworth*, 889 F.3d 350, 353-54 (7th Cir. 2018) (quoting *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992)). Defendant's "allegations and moving papers" must be "sufficiently definite, specific, non-conjectural and detailed . . . to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. McGaughy,* 485 F.3d 965, 969 (7th Cir. 2007) (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)). In other words, the "onus" falls on defendant to "'specifically . . . allege[] a *definite disputed factual issue*,' and to demonstrate its materiality." *Id.* (quoting *United States v. Martin*, 422 F.3d 597, 603 (7th Cir. 2007)) (alterations and emphasis in original); *see also Curlin*, 638 F.3d at 564.

An evidentiary hearing will not aid the Court's assessment of the issues presented in defendant's motions to suppress. "The purpose of an evidentiary hearing is to resolve material factual disputes among the parties," *Villegas*, 388 F.3d at 324, not settle legal controversies. Defendant claims the search warrants were not supported by probable cause, and this issue can be settled based on a review of the search warrants themselves, submitted with the government's response. A further evidentiary hearing would therefore be superfluous.

Defendant's arguments also fail to make the requisite showing to warrant a *Franks* hearing. A defendant challenging the validity of a warrant under *Franks v. Delaware*, 438 U.S. 154 (1978) may obtain an evidentiary hearing only if he makes a substantial preliminary showing that: (1) the warrant affidavit contained a false

17

statement, (2) the affiant made the false statement intentionally or with reckless disregard for the truth; and (3) the false statement was material to the finding of probable cause. *United States v. Maro*, 272 F.3d 817, 822 (7th Cir. 2001). All three requirements must be met, and defendant must provide sworn statements of witnesses attesting to the claims of falsity, making it difficult for a defendant to make the required *Franks* showing. *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013). "[T]hese elements are hard to prove, and thus *Franks* hearings are rarely held." *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000).

As discussed above, defendant's main argument appears to be that Special Agent Fitzgerald acted recklessly by presenting an affidavit that did not sufficiently establish probable cause. However, as demonstrated above, the affidavits *were* supported by probable cause, a fact with which both Magistrate Judge Cole and Magistrate Judge Kim agreed. Beyond conclusory statements that the affiant acted recklessly, defendant fails to present any evidence to meet the high bar required to demonstrate a *Franks* hearing is necessary.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Veal's motions to suppress.


Respectfully submitted,


ANDREW S. BOUTROS
United States Attorney

By:    */s/ Stephanie Stern*
EMILY C.R. VERMYLEN
STEPHANIE STERN
JALAN JASKOT
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
312-353-5300

19